## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MICHAEL NEWBURY,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-05-876-F** |
| | ) | |
| **RON WARD, et al.,** | ) | |
| | ) | |
| **Defendants** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing pro se, brings this action pursuant to 42 U.S.C. § 1983 alleging various violations of his constitutional rights. Pursuant to an order by United States District Judge Stephen P. Friot, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). A court-ordered special report has been filed pursuant to Martinez v. Aaron, 570 F. 2d 317 (10th Cir. 1978), and Defendants have filed a motion to dismiss/motion for summary judgment, to which the Plaintiff has responded. Thus, the matter is at issue. For the reasons set forth herein, it is recommended that the Defendants' motion for summary judgment be granted.

In his complaint, Plaintiff names as Defendants Ron Ward, former director of the Oklahoma Department of Corrections, and Marty Sirmons, warden of the Dick Conner Correctional Center (DCCC). Plaintiff seeks relief from both Defendants in their individual capacities for damages and in their official capacities for injunctive relief. Complaint, p. 2.[1] Plaintiff alleges that his constitutional rights were violated by the

---

[1] The undersigned takes judicial notice that Ron Ward is no longer the director of the Department of Corrections, having retired on September 30, 2005. Accordingly, with regard to Plaintiff's official (continued...)

deduction of funds from his inmate account to pay for court costs in Case No. CRF-81-86, District Court of Logan County, despite no court order that he pay such costs. He sets forth four theories of recovery. In his first theory, he alleges a violation of his Fifth Amendment due process rights. In his second theory, he alleges a violation of his rights under the Eighth Amendment's prohibition against cruel and unusual punishment. His third theory is that the actions of Defendants violated his due process rights and his right to equal protection under the Fourteenth Amendment. Finally, he asserts a violation of his due process rights under the Oklahoma Constitution.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only where the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party. Calhoun v. Gaines, 982 F.2d 1470, 1472 (10th Cir. 1992). A dispute is "genuine," when viewed in this light, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." Id.

---

[1](...continued)
capacity claims, Justin Jones, the new Department of Corrections' director should be substituted as Defendant for Mr. Ward. Fed. R. Civ. P. 25(d)(1).

2

To obtain summary judgment, the moving party need not affirmatively negate the nonmovant's claims. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). Rather, the moving party initially bears the burden only of "'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." <u>Id.</u>, at 325.  Once the moving party has satisfied this burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. <u>Id.</u> at 324. The  nonmoving party "may not rest upon mere allegation" in his pleading to satisfy this requirement.  <u>Anderson</u>, 477 U.S. at 256. Rather, Fed. R. Civ. P. 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Celotex</u>, 477 U.S. at 324.  The special report filed herein "is treated like an affidavit," <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1111 (10th Cir. 1991), as is the complaint because Plaintiff has made his factual allegations under penalty of perjury. Complaint, p. 6; <u>see Hall</u>, 935 F.2d at 1111.

## III.  UNDISPUTED FACTS

Based upon the facts as shown by the special report, the complaint, the motion for summary judgment and Plaintiff's response, the undersigned finds the following material facts to be undisputed.

1.  Plaintiff is incarcerated at the DCCC pursuant to a judgment and sentence entered in the District Court of Logan County, Case No. CRF-81-86, on May 5, 1982, and is serving a term of life imprisonment.  Complaint, p. 1-2.

2.   Pursuant to Department of Corrections' policy OP-120230-01, "[s]tate court ordered costs would be paid by a mandatory ten percent of net pay (work release or private prison industries) or earnings of facility pay.  This amount will be automatically calculated and deducted from the inmate's account by [Inmate Trust Accounting System] at the time payroll is processed."  Special Report, Attachment 9, p. 3.

3.   The May 5, 1982 Judgment issued in Case No. CRF-81-86, includes the following:

> IT IS THEREFORE CONSIDERED, ORDERED, SENTENCED AND ADJUDGED BY THE COURT that the said defendant, Michael Newbury, is guilty of the crime of MURDER IN THE FIRST DEGREE as charged in the information herein and as shown by the verdict of guilty by the jury returned in said cause, and that for said offense the defendant be punished by being imprisoned for and during the term of <u>LIFE</u> from and after the date of his delivery to the Department of Corrections at the Lexington Assessment and Reception Center, Lexington, Oklahoma.

Special Report, Attachment 5.

4.   The Judgment and Sentence does not include any specific reference to court costs.  Special Report, Attachment 5.

5. Dick Connor Correctional Center staff have been deducting 10% from Plaintiff's inmate trust account on a monthly basis for court costs, and those amounts have been paid to the Clerk of Court for the District Court of Logan County.

6.   On March 6, 2005, Plaintiff submitted a "request to staff" to the trust fund officer, asking that the officer stop taking court costs from his account and that the money previously taken be credited to his account.  Special Report, Attachment 3, p. 2.

7.   Plaintiff received a response that cited to OP-120230-01.  Special Report, Attachment 3, p. 2.

4

8. On March 14, 2005, Plaintiff filed a grievance raising the same issue, which he had apparently grieved in November 2004, noting that there was no court order in place that permitted prison officials to deduct costs from his account. Special Report, Attachment 3, p. 1.

9. On April 5, 2005, Plaintiff's grievance was denied, because the Department of Corrections concluded that Plaintiff had been assessed court costs of $3683.88, which should be paid through the mechanism set forth in OP-120230. Special Report, Attachment 3, p 4.

10. Plaintiff's attempt to appeal the denial of his grievance was returned to him for procedural errors. Special Report, Attachment 3, p. 6.

11. Plaintiff's second attempt at appealing was returned for similar reasons. Special Report, Attachment 3, p. 12.

12. Plaintiff apparently corrected those procedural errors on his third attempt and on June 8, 2005, the director's designee, Debbie Morton, concluded that Plaintiff had not substantiated his appeal with any authority for error. Accordingly, the reviewing authority's response was affirmed and Plaintiff's request for relief was denied. Special Report, Attachment 3, p. 19.

13. Patricia Slater, a deputy court clerk for the District Court of Logan County, indicates that there is no order in the record for Plaintiff to pay court costs, but that as a standard rule, everyone pays court costs. Special Report, Attachment 7, p. 18.

## IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants have moved for summary judgment on several grounds.

## A. PLAINTIFF'S DUE PROCESS CLAIMS

### 1. Plaintiff's Fifth Amendment Claim

Defendants correctly note that Plaintiff's claim for the deprivation of his property by the State of Oklahoma implicates Plaintiff's rights under the Fourteenth Amendment, not the Fifth Amendment. The Fifth Amendment due process clause only protects against due process violations caused by the federal government. Parnisi v. Colorado State Hospital, No. 92-1368, 1993 WL 118860, * 1 (10th Cir. April 15, 1993).[2] State actors are subject to the due process clause of the Fourteenth Amendment, not the Fifth Amendment. Id. Because Plaintiff does not allege that Defendants were federal actors, Defendants are entitled to summary judgment on Plaintiff's Fifth Amendment claims.

### 2. Plaintiff's Due Process Claim under the Fourteenth Amendment

A due process claim involves a two-part inquiry: Whether the Plaintiff was deprived of a protected interest and, if so, what process was due. Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982). In order for an interest to be "property" for the purpose of the due process clause, it must amount to a legitimate claim of entitlement grounded in state law. Id. at 430. Relying on Cumbey v. State, 699 P.2d 1094 (Okla. 1985), the Defendants argue that Plaintiff has no protected property interest in the funds placed in his mandatory savings account.[3] In Cumbey, three Oklahoma state prisoners

---

[2]Unpublished disposition cited as persuasive authority pursuant to Tenth Circuit Rule 36.3.

[3] Under Oklahoma law, twenty percent of an inmate's wages is placed in a mandatory savings account, and funds from an inmate's mandatory savings "account may be used by the inmate for fees or costs in filing a civil or criminal action as defined in Section 151 et seq. of Title 28 of the Oklahoma Statutes or for federal action as defined in Section 1911 et seq. of Title 28 of the United States Code, 28 U.S.C., Section 1911 et seq...." Okla. Stat. tit. 57, §549(A)(5). The money in an inmate's mandatory savings account is held in the custody of the Oklahoma Department of Corrections and is only "payable to the prisoner upon (continued...)

filed a civil rights action in state court challenging the administration of inmate mandatory savings accounts. <u>Cumbey</u>, 699 P.2d at 1095. Specifically, they complained that they were unjustly denied immediate access to funds in those accounts in violation of both the Oklahoma and the U.S. Constitutions. <u>Id</u>. at 1095-96. The trial court sustained the state's demurrer to the petition and the prisoners appealed. <u>Id.</u> at 1096. On appeal, the Oklahoma Supreme Court found that the prisoners had no vested property interest in funds in their mandatory savings account; rather, they had a conditional right only to any monies left in the account at the time of the prisoner's release. <u>Id.</u> at 1097. Based upon <u>Cumbey</u>, the Defendants contend that because the Plaintiff has no right to the immediate personal usage of funds in his mandatory savings account, he has no protected property interest in those funds.

The Tenth Circuit Court of Appeals considered whether an inmate in the custody of the Wyoming Department of Corrections had a protected property interest in the wages he earned while incarcerated in the case of <u>Gillihan v. Shillinger</u>, 872 F.2d 935 (10th Cir. 1989). The Wyoming statutory scheme, like that of Oklahoma, provided that monies earned through prison employment were to be paid to prisoner accounts, and amounts could be deducted as punishment or pursuant to certain regulations promulgated in accordance with state statutes. Any remaining funds were to be paid to the prisoner upon discharge or parole. The plaintiff in <u>Gillihan</u> had been transferred to Arizona, and approximately two years later had been returned to Wyoming. Wyoming prison officials advised him that he was going to be charged for the transportation expenses relating to

---

[3](...continued)
his or her discharge or upon assignment to a prerelease program." Id.

his return to Wyoming and that his inmate account would be frozen until he had paid the costs in full.  The Court concluded that because the prisoner has a legitimate expectation that he will be permitted to utilize the money in his trust account, in part, as he desires, he has a property interest in the funds.  Thus, even though the account was not payable until the inmate was discharged, the statute created "a legitimate expectation that money not used for the specified reasons will be returned to the inmate at the end of his incarceration and, therefore creates a protected property interest in the funds." Gillihan, 872 F.2d at 939.  The costs of transporting an inmate between facilities was not one of the specified reasons that the state of Wyoming could deduct money from an inmate's account.

The United States District Court for the District of Kansas considered a similar argument made by a Kansas inmate who complained about deductions made from his inmate trust fund account for payment into the crime victims compensation fund.  The Court concluded that the plaintiff did not have a protected property interest in the full amount of his wages, because Kansas law permitted the Department of Corrections to promulgate regulations for various deductions, and required a provision for a five percent deduction for payment to the victim compensation fund.  See Kansas Stat. Ann. § 72-5211(b).  The Court concluded that "to the extent plaintiff has a protected interest in his wages, that interest would extend only to those wages remaining in his account after all mandated deductions are made." Ellibee v. Simmons, No. 03-3194-JWL, 2005 WL 863244  (D. Kan. Aug 4. 2005), Order at p 4.[4]

---

[4]This case is currently on appeal to the Tenth Circuit, Case No. 05-3479.

Thus, under the authority of <u>Cumbey</u>, <u>Gillihan</u> and <u>Ellibee</u>, the undersigned finds that Plaintiff's protected interest in the funds in his mandatory savings account only extends to those funds remaining in the account after all mandated deductions are made. Accordingly, the question then becomes whether payment of court costs from Plaintiff's mandatory savings account is a mandated or authorized deduction such that Plaintiff did not have a legitimate claim of entitlement to the full amount of his trust account.

Under Oklahoma law, the State Board of Corrections has the duty to establish the percentage of wages which shall be available "for payment of costs and expenses for criminal actions against such inmate."   Okla. Stat. tit. 57 § 549(5).   The Oklahoma Department of Corrections has implemented this provision through OP-120230, which provides in relevant part that "[s]tate court ordered costs would be paid by a mandatory ten percent of net pay or earnings of facility pay," which is automatically calculated and deducted from the inmate's account at the time payroll is processed.   OP-120230(D)(1), Special Report, Attachment 9.

In <u>Webb v. Maynard</u>, 907 P.2d 1055 (Okla. 1995), the Court considered whether it was appropriate for the Department of Corrections to withhold ten percent of an inmate's wages to pay for court costs and other fees.   At Mr. Webb's sentencing, the Court had ordered that he "[p]ay the court costs in the sum of 70 dollars six months after release...."   <u>Id.</u> at 1057.   Mr. Webb contended that since the costs were not due until six months after his release from prison, that the Department of Corrections was in effect modifying his judgment and sentence by deducting a portion of his prison wages to pay costs while he was still in prison.   The Court concluded that Okla. Stat. tit. 57 § 549

9

grants the Department of Corrections the authority to deduct funds from an inmate savings account to pay for court costs.  Id.  This statute, Department of Corrections Policy OP-120230, and the Webb case establish that the Department of Corrections may properly deduct court costs from an inmate's mandatory savings account and the inmate has no property interest in those funds.  Plaintiff contends though that since the Court did not impose costs in his criminal case, the Department of Corrections cannot take such costs from his account.  However, the undersigned concludes that costs are automatically imposed against a convicted defendant in a criminal case in Oklahoma.

Okla. Stat. tit. 28 § 101 provides that "fees herein provided for the clerk of the district court . . . and all costs in the prosecution of all criminal actions **shall**, in case of conviction of the defendant, be adjudged a part of the penalty of the offense of which the defendant may be convicted...." (emphasis added).  Defendants contend that despite the absence of any language in the judgment specifically holding Plaintiff accountable for court costs, that they were automatically imposed by virtue of this statute.  Plaintiff responds by relying on a federal criminal statute regarding costs in a criminal case.  Of course, that case is inapplicable to a conviction from an Oklahoma state court, and accordingly, Plaintiff's reliance thereon is misplaced.   Additionally, Defendants' argument is correct in light of the mandatory language of Okla. Stat. tit. 28 § 101.

In Ex parte Clemmons, 225 P. 184 (Okla.Crim.App. 1924), the Court interpreted a prior version of § 101, concluding that "[a] fair construction of this statute impels us to hold that since its enactment its provisions relating to fines and costs automatically become a part of every criminal judgment imposing a fine or imprisonment or both . . ."

Id. at 185.  The Court concluded that "to all intents and purposes the fine and costs provisions of the statute automatically become a part of the judgment without any specific recital to that effect."  Id.  More recently, in Webb, the Supreme Court of Oklahoma stated that "fines and court costs are adjudged a part of the punishment upon conviction."  Id. at 1060 (citing Ex Parte Arnett, 225 P.2d 381 (Okla.Crim.App. 1950); Whaley v. District Court of Mayes County, 422 P.2d 227 (Okla.Crim.App. 1966)). Although the authorities addressing the mandatory nature of § 101 and its predecessors have generally turned on the issue of imprisonment pending the payment of costs, the statute's mandatory language is also presumed applicable to the taxing of costs.  In State v. Claborn, 870 P.2d 169 (Okla.Crim.App. 1994), the Court commented on the mandatory nature of the assessment.   "The question in this appeal is whether the mandatory statutory assessments at issue conflict with the [Okla. Stat. tit. 22] section 926 right to have a jury determine punishment," which the Court held they do not.  The Court noted the assessments were not an addition to the legislatively sanctioned range of punishment, which is a jury decision, but rather were to be considered fees or costs authorized by statute.  Id. at 173.  Accordingly, although it is undisputed that Plaintiff's judgment did not include specific language imposing costs, Okla. Stat. tit. 28 § 101 is mandatory, and operates to automatically impose costs upon a criminal defendant upon fact of conviction, rendering explicit language regarding costs unnecessary.  This interpretation of the statute is bolstered by the statement of Patricia Slater, that as standard practice, all defendants convicted of a crime in Logan County pay court costs.  The determination as to amount is a ministerial task for the clerk of court.  Okla. Stat. tit. 28 § 151(A).

11

Because court costs are mandatory and automatic, the Department of Corrections is authorized to withhold funds for purposes of paying the costs to the District Court of Logan County. "The authorization given to the Department under § 549 is clear and unambiguous. While incarcerated, the funds earned by a prison inmate and deposited in his savings account may be withdrawn by the Department to pay the costs of prosecution, victim compensation fees, and other specified items as long as at least twenty percent of the inmate's earnings are paid to the prisoner upon his discharge from prison or assignment to a prerelease program." Webb, 907 P.2d at 1059. The mere fact that the trial court failed to include costs in the judgment and sentence, which can be viewed as a housekeeping mechanism in light of § 101, the Department of Corrections operated within its statutory power in deducting the costs from Plaintiff's account. "The Legislature has authorized the withdrawal of a portion of an inmate's *prison wages* to apply towards those costs and fees under § 549 regardless of whether they are due under §§ 101 and 983 or not." Webb, 907 P.2d at 1060. Accordingly, although OP-120230 specifically refers to state court ordered costs, in light of the mandatory nature of § 101 it was appropriate for Defendants to deduct the costs from the Plaintiff's inmate account and as a result Plaintiff did not have a property interest in the amount deducted for court costs.

Accordingly, the undersigned recommends that summary judgment be granted in favor of the Defendants on Plaintiff's due process claim.

**B. PLAINTIFF'S EIGHTH AMENDMENT CLAIM**

Plaintiff also alleges that the deduction of funds from his inmate account violates the prohibition against cruel and unusual punishment set forth in the Eighth Amendment.  The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-527 ( 1984)).  See Ramos v. Lamm, 639 F.2d 559, 568 (10th Cir. 1980) (states must provide their inmates with "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (i.e., hot and cold water, light, heat, plumbing)").  Not all deprivations rise to constitutional significance and only deprivations of essential human needs trigger the Eighth Amendment proscription against cruel and unusual punishment.  Gillihan, 872 F.2d at 940-41.  Plaintiff, however, does not allege nor has he provided any evidence to establish that he has been deprived of essential human needs.   Accordingly, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claims as well.

### C.  PLAINTIFF'S CLAIM UNDER THE OKLAHOMA CONSTITUTION

Plaintiff also premised a claim on the Oklahoma Constitution.  Complaint, p. 4. 42 U.S.C. § 1983 supports claims under the United States Constitution, not a state constitution.  A violation of the Oklahoma constitution alone does not give rise to a federal cause of action under § 1983. Malek v. Haun, 26 F.3d 1013, 1016 (10th Cir. 1994) ("even though [the plaintiff] alleges a violation of the Utah Constitution, a violation of

state law alone does not give rise to a federal cause of action under § 1983"). Accordingly, Defendants are entitled to summary judgment on this claim as well.

To the extent Plaintiff would have a claim under Oklahoma law for the alleged violation of the Oklahoma Constitution, the Court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).  Although the Court does have discretion to exercise supplemental jurisdiction under 28 U.S.C. § 1367, the Supreme Court has suggested that lower courts decline to exercise pendent jurisdiction when the federal claims are dismissed at an early stage in the proceedings.  See Carnegie-Mellon University v. Cohill, 484 U. S. 343, 350 (1988) ("when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice"); Exum v. U.S. Olympic Committee, 389 F.3d 1130, 1138-39 (10th Cir. 2004); see generally 28 U.S.C. §1367(c)(3) (stating that "supplemental jurisdiction" may be declined if the district court "has dismissed all claims over which it had original jurisdiction").

### D.  Plaintiff's Equal Protection Claim

Plaintiff's complaint also contains an equal protection claim.  Complaint, p. 4. Defendants do not address this claim in their motion for summary judgment. Nevertheless, the Court should dismiss this claim, because Plaintiff alleges no facts that would support an equal protection claim.

The Equal Protection Clause "requires the government to treat similarly situated people alike."  Barney v. Pulsipher, 143 F.3d 1299, 1312 (10th Cir. 1998) (citing City of

Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).  Thus, to assert a viable equal protection claim, a plaintiff must first make a threshold showing that he was treated differently from others who were similarly-situated to him.  Id.  Plaintiff has not alleged that he was treated differently than similarly situated inmates nor has he alleged, beyond what is discussed supra, that he has been denied a fundamental right. Conclusory allegations are insufficient to state a cognizable claim under Section 1983. See Abbott v. McCotter, 13 F.3d 1439, 1441 (10th Cir. 1994) (affirming the dismissal of equal protection claims in a Section 1983 action when "the plaintiff made only conclusory allegations and pleaded no facts" supporting his claims).  Because Plaintiff has no valid claim for the deprivation of his due process rights, and because he does not allege any additional violation of his rights or that he is being treated differently than similarly situated inmates, his equal protection claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### E.  IMMUNITY

Finally, Defendants assert that they are entitled to qualified immunity in their individual capacities and Eleventh Amendment immunity in their official capacities. Defendants' Motion, p. 6-7.  Plaintiff does not seek monetary damages from Defendants in their official capacities, he seeks injunctive relief.  The Eleventh Amendment bars suit in federal court against a State by citizens of another state or by the State's own citizens. See Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356, 363 (2001). State department of corrections' employees sued in their official capacity also have Eleventh Amendment immunity for claims for money damages and declaratory judgment.

Johns v. Stewart, 57 F.3d 1544, 1553 (10th Cir. 1995) ("Eleventh Amendment bars a federal court from ordering notice relief in a suit against the state, unless it is ancillary to a judgment awarding prospective injunctive relief" and "'does not permit judgments against state officers declaring that they violated federal law in the past.'") (citing P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993)).  However, the Eleventh Amendment does not bar claims against state officials in their official capacities where the relief requested is prospective injunctive.  "[W]hen an official of a state agency is sued in his official capacity for prospective equitable relief, he is generally not regarded as 'the state' for purposes of the Eleventh Amendment and the case may proceed in federal court." ANR Pipeline Co. v. Lafaver, 150 F.3d 1178, 1188 (10th Cir. 1998).  Because the Eleventh Amendment does not bar an award of prospective injunctive relief against a state official in his official capacity, Eleventh Amendment immunity does not bar Plaintiff's official capacity claims against Defendants Ward and Sirmons, however, they are nevertheless entitled to summary judgment on the merits as set forth above.

Because the Defendants are otherwise entitled to summary judgment, it is unnecessary to address the qualified immunity issue.  "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." County of Sacramento v. Lewis, 523 U.S. 833, 842 n.5 (1998).  However, the undersigned notes that there is no clear controlling case law under these circumstances, such that it would be difficult to conclude that the Defendants' conduct violated "clearly established statutory

or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Hovater v. Robinson, 1 F.3d 1063 (10th Cir. 1993). In determining whether a defendant is entitled to qualified immunity, the key inquiry is the "objective reasonableness" of the officials' conduct in light of the legal rules that were "clearly established" at the time the action was taken. Harlow, 457 U.S. at 818. As set forth above, the law was established in such a way that the Defendants' actions were appropriate, and accordingly, they would be entitled to qualified immunity on Plaintiff's claim for damages.

### F.  ACCESS TO CASE LAW

In response to the motion for summary judgment, Plaintiff asserts that there is an unwritten policy at the DCCC that prohibits prison officials from providing copies of cases from before 1977, unless those cases were previously placed in the legal files of the facility.  As a result, Plaintiff contends that he was unable to fully respond to two of the four arguments set forth by the Defendants.  It does not appear that Plaintiff has fully exhausted any independent access to the Court claim that Plaintiff might have as a result of this alleged policy.  Furthermore, the undersigned concludes that Plaintiff's inability to access the cases did not disadvantage his ability to respond to the motion for summary judgment in light of the holding of the cases.  Nevertheless, attached hereto as exhibits are copies of the pre-1977 cases cited above, for purposes of Plaintiff's objection.  The undersigned has not attached the cases cited by Defendants  but not cited above, because they are not necessary for purposes of preparing Plaintiff's objection.

### RECOMMENDATION

17

For the reasons set forth above, it is recommended that Defendants' motion for summary judgment [Doc. No. 12] be granted with regard to Plaintiff's claims under the Fifth Amendment, Eighth Amendment, and the Fourteenth Amendment due process clause.   It is further recommended that Plaintiff's claims under the Equal Protection Clause be dismissed pursuant to 28 U.S.C. § 1915A, and that the Court decline to exercise supplemental jurisdiction over Plaintiff's claims under the Oklahoma Constitution.   Plaintiff is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by June 5, 2006, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein.   Moore v. United States, 950 F.2d 656 (10th Cir. 1991).   This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge.

ENTERED this 16th day of May, 2006.


DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE